# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| YELLOW ROCK, L.L.C., ET AL. | : | CIVIL ACTION NUMBER |
| VERSUS | : | 05-1443 |
| SASOL NORTH AMERICA, INC., ET AL. | : | JUDGE TRIMBLE MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiffs' Motion to Remand [doc. # 14].[1]

### Background

In 2001, Sasol North America, Inc. obtained a sublease for certain underground storage rights including the right to store ethylene and/or propylene gas in Sulphur Mines Storage Cavern A-1. (Petition, ¶ 6). Effective May 1, 2003, Yellow Rock, L.L.C. obtained an oil and gas lease permitting it the "exclusive rights of investigating, exploring, prospecting, drilling, operating, producing and owning oil and gas on the same immovable property in Calcasieu Parish, Louisiana that is the object of Sasol's Storage Lease. *Id.* at ¶ 8. Duplantis Resources, L.L.C. and Steve Wippel were granted "non-recordable production payment interest[s]" payable in the same manner as a lessor's royalty interest, on all oil, gas and other minerals produced from Yellow Rock's oil and gas lease. (Petition, ¶ 9; Exhs. 3-4 to Opp. Memo.).

On October 7, 2004, pursuant to its rights under the oil and gas lease, Yellow Rock began drilling to a target depth of 3,500 feet via an existing well bore. (Petition, ¶ 10). The operation was identified as the "968 ST1 Fee Well." *Id.* However, on October 19, 2004, at a depth of

---

[1] The motion has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

2,200 feet, the contractor encountered an unexpectedly high subsurface pressure that caused a blowout of the well bore. *Id*. at ¶ 11; Opp. Memo, Exh. 10, pg. 40. As a result, Yellow Rock was forced to abandon its drill pipe and assembly and plug the hole. *Id*. Yellow Rock suffered $1.1 million in out of pocket expenses. *Id*.

About one week after the blowout, Haywood Davis, a contractor involved in drilling the 968 ST1 Fee Well, had a conversation with Tommy Fletcher, a Sasol employee. (Petition, ¶ 12; Bertolet Depo., pgs. 37-40, Opp. Memo. Exh. 10). Fletcher purportedly stated that "to be honest with you we have a leak and the gas is migrating somewhere but we don't know where." (Opp. Memo., Exh. 7 to Bertolet Depo., Exh. 10). Davis told Fletcher that their well had suffered a blowout, and that the gas might have gone over there. *Id*. Fletcher agreed. *Id*.; *see also*, Davis Depo., pg. 21, Opp. Memo. Exh. 12. Although, Fletcher did not say what gas was migrating, Davis assumed that the gas was ethylene. (Davis Depo., pg. 26).

From the foregoing conversation, Yellow Rock, Duplantis Resources, and Steve Wippel determined that the blowout of the 968 ST1 Fee Well was caused by an ethylene and/or propylene gas leak from the Sulphur Mines Storage Cavern A-1. Accordingly, on July 7, 2005, Yellow Rock, Duplantis Resources, and Steve Wippel filed the instant suit against Sasol and Thomas J. "Tommy" Fletcher in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana. (Petition). The suit seeks damages for: (1) the costs associated with the loss of the 968 ST1 Fee Well; (2) the diminished value of plaintiffs' oil and gas leasehold interest and royalty interests due to the inability to develop oil and gas; and (3) the net fair market value of the oil and gas that plaintiffs are unable to recover. (Petition, ¶ 23). Plaintiffs also seek an injunction compelling defendants to remediate the gases that have escaped into the subsurface, and to repair or abandon the storage cavern. (Petition, ¶¶ 24-25).

On August 10, 2005, Sasol removed the case to federal court on the basis of diversity

jurisdiction. 28 U.S.C. § 1332. Plaintiff, Yellow Rock is a citizen of Mississippi. (Amend.

Notice of Removal, ¶¶ 3-4). Plaintiff, Duplantis Resources is a citizen of Louisiana. (Amend.

Notice of Removal, ¶ 5). Plaintiff, Steve Wippel, is a citizen of Texas. (Petition, Preamble).

Defendant, Sasol, is a Delaware Corporation, with its principal place of business in Texas.

(Notice of Removal, ¶ 10). Defendant, Thomas Fletcher, is a Louisiana citizen. (Petition, ¶ 1).

To circumvent the patent lack of diversity, Sasol argues that plaintiff, Wippel, and

defendant, Fletcher, have been improperly joined, and that their presence should be disregarded

for purposes of determining diversity (*i.e.* improper joinder). Plaintiffs do not concur with

Sasol's assessment of the viability of Wippel's claims or the viability of plaintiffs' claims against

Fletcher. Accordingly, on September 9, 2005, plaintiffs filed the instant motion to remand due to

lack of subject matter jurisdiction (incomplete diversity), 28 U.S.C. § 1332. Plaintiffs also seek

costs, expenses, and fees associated with the "wrongful" removal.

On September 15, 2005, the undersigned issued a minute entry notifying the parties that if

the court found that plaintiffs had no reasonable possibility of recovery against the non-diverse

defendant, and if the non-diverse plaintiff had no reasonable possibility of recovery against the

removing defendant, then summary judgment would be recommended *sua sponte* in favor of

defendants. *See*, September 15, 2005, Minute Entry. Parties were invited to file by September

29, 2005, any additional briefs and/or competent summary judgment evidence addressing the

relevant issue(s). *Id*. By agreement of the parties, deadlines for jurisdictional discovery and

briefing were extended until April 2006. The matter is now before the court.

<u>Improper Joinder</u>

Once a case has been removed, the burden lies with the removing party to prove that the

court has jurisdiction to decide the claim. *Jernigan v. Ashland Oil Inc*. 989 F.2d 812, 815 (5th

Cir. 1993)(citing, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)). It is

3

axiomatic that "[a]ll plaintiffs must be diverse in citizenship from all defendants in an action brought under the jurisdiction conferred by 28 U.S.C. § 1332(a)." *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990). If jurisdiction is alleged on the basis that non-diverse parties have been improperly joined, then the removing party must establish either: "actual fraud in the pleading of jurisdictional facts," or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)(*en banc*), *cert. denied by*, *Illinois Cent. R. Co. v. Smallwood*, 544 U.S. 992, 125 S.Ct. 1825 (2005)(citing, *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)). Moreover, the instant parties agree that the improper joinder doctrine can be applied to the alleged improper joinder of a plaintiff. *See also, Miller v. Home Depot, U.S.A., Inc.*, 199 F.Supp. 2d 502, 508 (W. D. La. 2001).

In the case *sub judice*, there are no allegations of actual fraud. Accordingly, our focus is the second basis for improper joinder. *See, Travis, supra.* In resolving this issue, we must determine whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the non-diverse defendant; *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against the non-diverse defendant. *Smallwood, supra.* To establish improper joinder of a non-diverse plaintiff, removing defendant must demonstrate that the non-diverse plaintiff has no possibility of recovery against defendants; *i.e.* that there is "no reasonable basis" for the district court to predict that the non-diverse plaintiff might recover against the defendants. *See, Smallwood, supra* and *Miller, supra.*

The court may resolve this issue in one of two ways: 1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the non-

diverse defendant under state law (*i.e.* a Fed.R.Civ.P. 12(b)(6) analysis);[2] or 2) in the few cases

where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would

determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and

conduct a summary inquiry. *Smallwood, supra.* However, the "summary inquiry is appropriate

only to identify the presence of discrete and undisputed facts that would preclude plaintiff's

recovery against the [non-diverse] defendant." *Id.* In other words, facts that can be easily

disproved if not true. *Id.* "Attempting to proceed beyond [a] summary process carries a heavy

risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished

from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the

chances of the claim against the [non-diverse] defendant alleged to be improperly joined."

*Smallwood*, 385 F.3d at 574. Although here, discovery proceeded for some seven months, it was

conducted at the joint request of the parties, and has been limited to jurisdictional issues. *See*,

*Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 310 (5th Cir. 2005).

In its analysis, the court must consider "all unchallenged factual allegations" in the light

most favorable to the plaintiff. *Travis, supra.* Any contested issues of fact and ambiguities of

state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish

improper joinder, then diversity is not complete, and remand is required. *Id.*

Discussion[3]

Steve Wippel was granted a "non-recordable production payment interest" payable in the

same manner as a lessor's royalty interest, on all oil, gas and other minerals produced from

---

[2] For the alleged improper joinder of the non-diverse plaintiff, the inquiry would be whether the non-diverse plaintiff stated a claim against the defendants under state law.

[3] In diversity cases, federal courts apply substantive state law. *Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 295 (5th Cir. 1995)(citing, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938)).

Yellow Rock's oil and gas lease. (Petition, ¶ 9; Exhs. 3-4 to Opp. Memo.). For our purposes, a production payment is equivalent to an overriding royalty. *See, NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957, 967-968 (5th Cir. 1991). Overriding royalties are classified as real rights and incorporeal immovables. *Robichaux v. Pool*, 209 So.2d 77, 79 (La. App.1st Cir. 1968); *Duncan v. Paragon Resources, Inc.*, 417 So.2d 850, 854 (La. App. 3d Cir. 1982)(citing La. R.S. §§ 31:16 & 31:18);[4] *Terry v. Terry*, 565 So.2d 997, 1000 (La. App. 1st Cir.1990); *CLK Co., L.L.C. v. CXY Energy Inc.*, 719 So.2d 1098, 1101 (La. App. 4th Cir.1998). An incorporeal immovable, in turn, may be protected in the same manner as the ownership and possession of other immovable property. *Holcombe v. Superior Oil Co.*, 213 La. 684, 688-689, 35 So.2d 457, 458 (La.1948)(citations omitted). Moreover, every act that damages or depreciates the enjoyment of an incorporeal immovable gives rise to a cause of action against the responsible party. *See, Holcombe, supra*, (citing La. Civil Code Article 2315).[5] It also arguably makes no difference that the right to the royalty depends on an unmet condition, *i.e.* production. *See*, La. Civil Code Art. 1771. At a minimum, the foregoing authority supports a cause of action by Wippel against the defendants.

In its opposition, Sasol relies on *In Re TT Boat Corporation*, 1999 WL 1276837 (E.D. La. 12/21/1999). In that case, the court held that royalty interest holders were precluded from asserting claims against a tug owner following an allision between the tug/barge and an offshore oil platform. *In Re TT Boat Corporation*, 1999 WL 694095 (E.D. La. 9/07/1999). The court's ruling was premised upon the maritime rule that a plaintiff cannot recover for economic loss unless he has a proprietary interest in property that suffered physical damage. *Id.* (citing *Robins*

---

[4] Sections 31:16 and 31: 18 provide that a royalty is a mineral right which in turn is an incorporeal immovable. La. R.S. §§ 31:16 & 31:18.

[5] *See also*, La. Code Civ. Pro. Art. 3664.

*Drydock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134 (1927); *Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir.1985)(*en banc*)).  With little discussion, the court concluded that the royalty interest holder had no proprietary interest in the production.  *Id*.  However, there is authority under Louisiana law to the contrary.  *See*, discussion, *supra*.  Moreover, maritime law is inapplicable here.

 In *PPG Industries, Inc. v. Bean Dredging*, the Louisiana Supreme Court determined that under Louisiana law the scope of the duty owed by a negligent tortfeasor did not encompass economic damages indirectly suffered by a party pursuant to a contract with the tort victim.  *PPG Industries, Inc. v. Bean Dredging*,  447 So.2d 1058, 1060 (La. 1984).[6]  Yet, unlike the plaintiff in *Bean Dredging*, Wippel's damages are a subset of the damages (lost production) suffered by the working interest holders.  Wippel's presence does not increase Sasol's exposure; it merely transfers a portion of it to the appropriate interest holder who is permitted to protect that right under the law.  *See*, discussion, *supra*.  Given these circumstances, we cannot conclude that the duty/risk analysis necessarily precludes any reasonable possibility of recovery by Wippel.  *See, Cleco Corp. v. Johnson*,  795 So.2d 302  (La. 2001)(Electric utility may bring subrogation action for damages suffered by its customers due to a power surge caused by operator backing into utility pole).

We caution that this is not a motion for summary judgment where after defendants make an initial showing, the burden of proof shifts to plaintiffs to establish competent summary judgment evidence in support of each element of their claim against defendants.[7]  Rather, in the

---

[6]  The tortfeasor was a dredging company that damaged a pipeline, thus impairing the pipeline owner's ability to supply natural gas pursuant to its contract with plaintiff.  *Id*.

[7]  On September 15, 2005, the undersigned notified the parties that if the court found that plaintiffs had no reasonable possibility of recovery against the non-diverse defendant, and if the non-diverse plaintiff had no reasonable possibility of recovery against the removing defendant,

context of a motion to remand, removing defendants have the burden of proving that there is arguably no reasonable basis that the non-diverse plaintiff might recover against defendants under state law. *See, Badon v. RJR Nabisco, Inc.* ("*Badon II*"), 236 F.3d 282 (5th Cir. 2000). Removing defendant has not met its burden.

We do not purport to express an opinion on the merits of the claims asserted against the removing defendant. Nor do we even suggest that a Louisiana court will ultimately find that as a matter of law, and fact, defendant is liable.[8] We only repeat the oft-cited principle that where the removing party grounds its allegations of improper joinder upon a theory that a non-diverse plaintiff cannot recover from defendants as a matter of law, this court is obliged to resolve all disputed questions of fact and any ambiguities in controlling substantive law in favor of plaintiffs; and then determine whether there could be a valid cause of action set forth under state law. *See, B. Inc, supra.* In this case, removing defendant has not established that Wippel was improperly joined. Wippel's continued presence destroys complete diversity between the parties, and thus subject matter jurisdiction is lacking. 28 U.S.C. § 1332. Remand is required. 28 U.S.C. § 1447.

Plaintiffs further seek the award of costs, expenses, and fees incurred as a result of the removal. Presumably plaintiffs seek costs and fees pursuant to 28 U.S.C. § 1447. An order remanding a case to state court may require payment of "just costs and any actual expenses, including attorney fees," that were incurred as a result of removal. 28 U.S.C. § 1447(c). "Absent

---

then summary judgment would be recommended *sua sponte* in favor of defendants. *See*, September 15, 2005, Minute Entry. However, having found a reasonable possibility of recovery by the non-diverse plaintiff we do not (and cannot) reach the issue of summary judgment.

[8] Especially when, as here, the evidence that ethylene and/or propylene leaked from the Sulphur Mines Storage Cavern A-1 is so tenuous. *See*, Davis Depo., pg. 26, Def. Exh. 12; and Fletcher Depo.

unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.* ___ __ U.S. ____, 126 S.Ct. 704 (2005)

Here, Sasol removed the case by arguing that the non-diverse parties had been improperly joined. Case law and evidence supported Sasol's position. Under the circumstances, we cannot conclude that Sasol lacked "objectively reasonable" grounds to remove the case.

The Fifth Circuit has recently recognized that a component of "costs" under § 1447(c) are the costs assessable under Fed.R.Civ.P. 54(d)(1)). *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004). Rule 54(d)(1) costs are not subject to the objective reasonableness test. *Id*. Rather, they "shall be allowed as of course to the prevailing party . . ." Fed.R.Civ.P. 54(d)(1). Rule 54(d) creates a strong presumption that the prevailing party will be awarded costs. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir.1985). Removing defendant has not overcome this presumption.

For the foregoing reasons,

IT IS RECOMMENDED that plaintiffs' motion to remand [doc. # 14] be GRANTED.

IT IS FURTHER RECOMMENDED that Fed.R.Civ.P. 54(d)(1) costs be assessed against the removing defendant. 28 U.S.C. § 1447(c).[9]

IT IS FURTHER RECOMMENDED that movants' requests for costs, fees, and expenses be otherwise DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(c), the parties have ten (10) business days

---

[9] The costs are limited to those incurred in federal court that would not have been incurred had the case remained in state court. *Avitts v. Amoco Production Co.* 111 F.3d 30, 32 (5th Cir. 1997). The costs are as specified in 28 U.S.C. § 1920. The amount of costs shall be determined by the Clerk of Court in the first instance. LR 54.3. An interactive version of AO Form 133 "Bill of Costs" can be found on the court's website: http://www.lawd.uscourts.gov/.

from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on August 16, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE